UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                    **MEMORANDUM & ORDER**

-against-                                               19-CR-156 (DRH)

TYRONE LIGON,
              Defendant.
-----------------------------------------------------------X

**APPEARANCES:**

**For the Government:**
    Breon S. Peace
    United States Attorney
    Eastern District of New York
    100 Federal Plaza
    Central Islip, New York 11722
    By:   Michael R. Maffei, A.U.S.A.

**For Defendant:**
    Keahon, Fleischer & Ferrante
    1393 Veterans memorial Highway, Suite 312North
    Hauppauge, New York 11788
    By:   Joseph J. Ferrante, Esq.

**HURLEY, Senior District Judge:**

The purpose of this Memorandum is to address the motion of defendant Tyrone Ligon ("Defendant" or "Ligon") for a reduction in sentence, otherwise known as a motion for compassionate release,[1] pursuant to 18 U.S.C. 3582(c)(1)(A)(i). (*See* DE 340 at 1.) For the reasons set forth below, the motion is denied.

---

[1] Ligon's motion uses the terminology "compassionate release." However, as noted by Judge Haight in *United States v. Shakur*, 498 F. Supp. 3d 490, 492 (S.D.N.Y. 2020), that term is not one contained in the First Step Act of 2018; rather it is one coined by the courts to characterize a reduction in sentence pursuant to that Act. *See also United States Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) (stating that the

## BACKGROUND

I.  **Conduct Underlying the Counts of Conviction**

On March 4, 2020, Ligon pled guilty pursuant to a plea agreement to conspiring to distribute illicit drugs, including at least 280 grams of cocaine base, as well as unspecified amounts of fentanyl, cocaine and heroin in Suffolk County between January 2015 and April 18, 2019. (March 4, 2020 Tr. (DE 99) at 19-20.)

Ligon was on New York State parole during portions of the conspiracy that underlies the count of conviction. Prior to the instant offense , Ligon "had five prior felony convictions, one misdemeanor convictions and two addition[al] convictions for violations. In addition, Ligon was adjudicated a youthful offender on two occasions following two drug related convictions. Importantly, in addition to all of his criminal conduct, Ligon has violated the conditions of parole or probation on at least two separate occasions, resulting in revocations. Indeed, Ligon's instant criminal conduct occurred while he was subject to, and under the supervision of, New York State parole. All of Ligon's convictions are narcotics related convictions." (Gov't's Dec. 10, 2021 Ltr. (DE 195) at 3; *see also* PSR (DE 140) at 8-15.)

II. **Defendant's Sentencing**

As set forth in the unobjected to Pre-Sentence Report (PSR), based on an offense level of 34 and a criminal history category of VI, the advisory guideline range for Defendant was 262 to 327 months of imprisonment, to be followed by five

---

term "compassionate release is a misnomer" as the First Step Act "in fact speaks of sentence reductions").

years of supervisory release. However, pursuant to 21 U.S.C. § 841(b)(1)(A), the minimum tern of imprisonment was ten years and the maximum term was life. In accordance with the plea agreement, the government recommended the mandatory minimum of ten years.

Sentencing was held on September 29, 2021. Prior to sentencing, by letter filed September 21, 2021, defendant set forth his recent medical history including his surgery for a meningioma and follow-up care. At sentencing, defendant again raised his surgery and resulting medical status and requested compassionate release. The Court sentenced Defendant to 120 months of incarceration followed by a term of five years supervised release.

### III. The Current Application

On November 17, 2021, Ligon made the instant application for compassionate release pursuant to §3582(c)(1)(A)(i), relying on the medical information set forth below, which medical information, as just noted, formed the primary basis for his earlier compassionate release request at sentencing.

In opposing the application, the government has supplied updated medical information for Ligon demonstrating that his conditions appear well-controlled with medication provided by the institution and treatments previously provided by outside medical professionals, together with information concerning COVID-19 and vaccinations rates at FCI Fort Dix where Ligon is incarcerated. The government argues that no compelling and extraordinary reason exists to support the instant application and that the 3553(a) sentencing factors do not warrant granting the

application.

In a reply filed on January 10, 2022, Ligon "supplemented" his request relying upon the COVID-19 pandemic and his comorbidities, as well as the strain the pandemic has put upon BOP's medical facilities.

## IV. Ligon's Medical History and Status

On February 2, 2021, Ligon suffered a seizure caused by a meningioma. Meningioma is the most common type of primary brain tumor; it grows out of the middle layer of the meninges called the arachnoid. The growth typically proceeds slowly and may exist for years before being detected. On February 17, 2021, surgery to remove the tumor took place at NYU Langone-Brooklyn by Dr. Miller; on February 24, 2021, he was transferred to rehabilitation at Kingsbrook Jewish Medical Center ("KJMC"), where his care was overseen by Dr. Ross.

On March 10, 2021, Dr. Miller reported to MDC that Ligon was ambulating with a wheeled walker and one person standing by to assist and that the operative sight looked good, but that Dr. Ross was reporting Ligon was still having cognitive issues.

On March 25, 2021, MDC was advised that Ligon had undergone a follow-up procedure at NYU Langone-Brooklyn to have a shunt inserted and fluid aspirated. Following the procedure, Ligon returned to KJMC to continue rehab. One month later, Dr. Ross reported that Ligon had cognitively improved, should be able to return to the MDC instead of a nursing facility upon completion of rehab, was performing activities of daily living with supervision and is able to walk without

assistance for 175 feet with occasional loss of balance.

On May 11, 2021, Dr. Ross reported that Ligon was cognitively back to baseline, was independent with ambulation and other activities of daily living. On May 13, 2021, Dr. Ross reported that Ligon was ready to be discharged.

Upon his return to MDC, Ligon was seen by Dr. Bailor at MDC. Ligon reported pain, a recent fall and being unable to take care of his daily activities. This was contrary to what MDC was told by KJMC about him being capable of independently handling all activities of daily living and his discharge without pain medication.

The medical records reflect that during his remaining time at MDC and while FCI Fort Dix, Ligon's treatment plan has been continued.

## V.    Applicable Law

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), the basis for the current application, provides:

> The court may not modify a term of imprisonment once it has been imposed except that - -
>
> (1) in any case - -
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in 3553(a) to the extent that they are applicable, if it finds that - -

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community under section 3142(g);
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582 (c)(1)(A).

In *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020), the Second Circuit held that courts are not constrained by the narrow grounds for granting compassionate release set forth United States Sentencing Guidelines § 1B1.13, the applicable guideline section for sentencing reductions setting forth guidance on what constitutes "extraordinary and compelling circumstances." However, even after *Brooker,* the mandate in § 3582(c)(1)(A)(i) remains, requiring a court contemplating a sentence reduction to consider the sentencing factors at 18 U.S.C. § 3553(a) to the extent they are applicable and determine whether they support granting the relief requested.

## VI.    The Application is Denied.

The Court begins its analysis with whether Ligon has demonstrated "extraordinary and compelling circumstance" and concludes that he has not. First, his medical condition was considered at the time of his sentencing.  Second, while he suffers from anxiety and hypertension and has a past history of meningioma,

these are being appropriately addressed. Moreover, given that Defendant has received a COVID-19 vaccine, his medical conditions do not support his request.

Even if extraordinary and compelling circumstances exist, the § 3553(a) factors, which this Court is required to consider, do not support the application. Indeed, the 3553 factors considered by the Court at the time of sentencing have not changed. It is appropriate for the Court to consider how a reduction in sentence would undermine the aims of the Court's original sentence. *See United States v. Roney*, 833 F. App'x 850, 853-54 (2d Cir. 2020).  Defendant has a long criminal history. Based upon his prior conduct there is nothing to suggest that he would not continue to be a danger to the community. He has a lengthy record of criminal conduct, including the commission of crimes while on parole or supervised release. Releasing Defendant now would not appropriately reflect the "nature and circumstances of the offense," or the "need for the sentence imposed" "to reflect the seriousness of the offense," "to afford adequate deterrence to criminal conduct" or "to protect the public from further crimes."

## VII.  CONCLUSION

For the foregoing reasons, Defendant's application for a reduction in sentence is denied.

**SO ORDERED.**

Dated: Central Islip, New York          s/ Denis R. Hurley
      March  29, 2022                   Denis R. Hurley
                                             United States District Judge